IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY RAUL,<br><br>        Plaintiff,<br><br>  v.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, DOMINICK CIAMPA, HANIF DAHYA, LESLIE D. DUNN, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, LAWRENCE J. SAVARESE, JOHN M. TSIMBINOS, AND ROBERT WANN,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by New York Community Bancorp, Inc. ("NYCB" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning NYCB and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against NYCB and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Flagstar Bancorp, Inc. ("Flagstar") (the "Proposed Transaction").

2. On April 24, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Flagstar. Pursuant to the terms of the Merger Agreement Flagstar's shareholders will receive 4.0151 shares of NYCB common stock for each share of Flagstar common stock owned (the "Merger Consideration").

3. On June 11, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration Statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against NYCB and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to NYCB shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of NYCB shares.

9. Defendant NYCB is incorporated under the laws of Delaware and has its principal executive offices located at 615 Merrick Avenue, Westbury, New York. The Company's common stock trades on the New York Stock Exchange under the symbol "NYSB."

10. Defendant Thomas R. Cangemi ("Cangemi") is and has been the Chairman of the Board, President, and Chief Executive Officer ("CEO") of NYCB at all times during the relevant time period.

11. Defendant Dominick Ciampa ("Ciampa") is and has been a NYCB director at all times during the relevant time period.

12. Defendant Hanif Dahya ("Dahya") is and has been a NYCB director at all times during the relevant time period.

13. Defendant Leslie D. Dunn ("Dunn") is and has been a NYCB director at all times during the relevant time period.

14. Defendant James J. O'Donovan ("O'Donovan") is and has been a NYCB director at all times during the relevant time period.

15. Defendant Lawrence Rosano, Jr. ("Rosano") is and has been a NYCB director at all times during the relevant time period.

16. Defendant Ronald A. Rosenfeld ("Rosenfeld") is and has been a NYCB director at all times during the relevant time period.

17. Defendant Lawrence J. Savarese ("Savarese") is and has been a NYCB director at all times during the relevant time period.

18. Defendant John M. Tsimbinos ("Tsimbinos") is and has been a NYCB director at all times during the relevant time period.

19. Defendant Robert Wann ("Wann") is and has been a NYCB director at all times during the relevant time period.

20. Defendants McAndrews, Fisher, Frink, Habiger, Rice, Lake, Lakshman, Maloney and Richman are collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants, along with Defendant NYCB, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

22. NYCB is a leading producer of multi-family loans on non-luxury, rent-regulated apartment buildings in New York City, and the parent of New York Community Bank. At March 31, 2021, New York Community reported assets of $57.7 billion, loans of $43.1 billion, deposits of $34.2 billion, and stockholders' equity of $6.8 billion. New York Community operates 236 branches through eight local divisions, each with a history of service and strength: Queens County Savings Bank, Roslyn Savings Bank, Richmond County Savings Bank, Roosevelt Savings Bank, and Atlantic Bank in New York; Garden State Community Bank in New Jersey; Ohio Savings Bank in Ohio; and AmTrust Bank in Florida and Arizona.

**The Company Announces the Proposed Transaction**

23. On April 26, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> WESTBURY, N.Y. and TROY, Mich., April 26, 2021 /PRNewswire/ -- New York Community Bancorp, Inc. (NYSE: NYCB) ("New York Community") and Flagstar Bancorp, Inc. (NYSE: FBC) ("Flagstar"), jointly announced today that they have entered into a definitive merger agreement under which the two companies will combine in an all stock merger.
>
> Under terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Flagstar shareholders will receive 4.0151 shares of New York Community common stock for each Flagstar share they own. Following completion of the transaction, the New York Community shares held by New York Community shareholders immediately prior to the transaction are expected to collectively represent approximately 68% of the combined company and the New York Community shares issued to Flagstar shareholders in the merger are expected to represent approximately 32% of the combined company. The implied total transaction value based on closing prices as of April 23, 2021 is approximately $2.6 billion.
>
> The new company will have over $87 billion in assets and operate nearly 400 traditional branches in nine states and 87 loan production offices across a 28 state

footprint. It will have its headquarters on Long Island, N.Y. with regional headquarters in Troy, MI, including Flagstar's mortgage operations. The combined company will maintain the Flagstar Bank brand in the Midwest. Flagstar's mortgage division will also maintain the Flagstar brand. Other states will retain their current branding.

Thomas R. Cangemi will be President and Chief Executive Officer of the combined company and Alessandro (Sandro) P. DiNello, Flagstar's current President and Chief Executive Officer, will become Non-Executive Chairman with John Pinto serving as Senior Executive Vice President and Chief Financial Officer of the combined company. Lee M. Smith will continue to lead the mortgage division as Senior Executive Vice President and President of Mortgage and Reginald Davis will head up consumer and commercial banking and serve as Senior Executive Vice President and President of Banking. The remaining key roles will combine the best talent from both companies. The Board of Directors will be comprised of 12 directors – eight from New York Community and four from Flagstar.

*   *   *

**Key Benefits of the Proposed Transaction**

**Financially Attractive Metrics:**

- The transaction is expected to be 16% accretive to NYCB's earnings per share in 2022 (assuming fully phased-in cost savings)
- Also expected to be 3.5% accretive to NYCB's tangible book value per share
- Exceptional pro-forma profitability with ROAA of 1.2% and ROATCE of 16%
- Strong pro-forma capital ratios and reserve coverage
- Enhanced capital generation after dividend of $500 million, annually
- NYCB dividend maintained

**Strategically Compelling:**

- Accelerates our transition towards building a dynamic commercial banking organization
- Creates a top-tier regional bank with significant scale and geographic and business line diversification
- Drives strong financial results and enhances capital generation
- Improves funding profile and interest rate risk positioning
- Market-leading rent-regulated multi-family lender, mortgage originator and servicer
- Maintains each Bank's unique low credit risk model
- Combines two strong management teams and boards

**Transaction will Benefit Communities, Customers, and Employees:**

- Both companies' long standing commitment to their communities will be enhanced
- Expands product offerings to our joint customer base
- Shared values and company missions

Piper Sandler & Co. and Goldman Sachs & Co. LLC served as financial advisors to New York Community in connection with the transaction. Sullivan & Cromwell LLP served as legal advisor.

Morgan Stanley & Co. LLC and Jefferies LLC acted as financial advisors to Flagstar. Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

24. On June 11, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

26. The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") and Jefferies LLC ("Jefferies") concerning the Proposed Transaction, but fails to provide material information concerning such.

27. With respect to Morgan Stanley's *Flagstar Public Trading Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

28. With respect to Morgan Stanley's *Flagstar Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for Morgan Stanley's application of a 5.0% annual growth rate; (ii) the inputs and assumptions underlying Morgan Stanley's use of the range of terminal forward multiples of 7.0x to 9.0x; (iii) the terminal values used in the analysis; and (iv) the inputs and assumptions underlying Morgan Stanley's use of the discount rates ranging from 8.5% to 10.5%.

29. With respect to Morgan Stanley's *Flagstar Analyst Price Targets Analysis*, the Registration Statement fails to disclose the price targets used by Morgan Stanley in the analysis, as well as the sources thereof.

30. With respect to Morgan Stanley's *NYCB Public Trading Comparables Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

31. With respect to Morgan Stanley's *NYCB Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for Morgan Stanley's application of a 5.0% annual growth rate; (ii) the inputs and assumptions underlying Morgan Stanley's use of the range of terminal forward multiples of 9.0x to 11.0x; (iii) the terminal values used by Morgan Stanley in the analysis; and (iv) the inputs and assumptions underlying Morgan Stanley's use of the discount rate ranges ranging from 7.5% to 9.5%.

32. With respect to Morgan Stanley's *NYCB Analyst Price Targets Analysis*, the Registration Statement fails to disclose the price targets used by Morgan Stanley in the analysis, as well as the sources thereof.

33. With respect to Morgan Stanley's *Pro Forma Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the basis for Morgan Stanley's use of the range of multiples used in the analysis; (ii) the projected dividends used by Morgan Stanley in the analysis; (iii) the terminal values used by Morgan Stanley in the analysis; and (iv) the individual inputs and assumptions underlying the discount rates.

34. With respect to Jefferies' *Selected Public Companies Analyses* for Flagstar and NYCB, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Jeffries in the analysis.

35. With respect to Jefferies' *Dividend Discount Analysis* for Flagstar, the Registration Statement fails to disclose: (i) the basis for Jefferies' use of a 5.0% annual growth rate; (ii) the inputs and assumptions underlying Jefferies' use of the range of terminal EPS multiples of 7.0x to 9.1x; (iii) the terminal values used in the analysis; and (iv) the individual inputs and assumptions underlying Jefferie's use of the discount rates ranging from 10.1% to 14.1%.

36. With respect to Jefferies' *Dividend Discount Analysis for NYCB*, the Registration Statement fails to disclose: (i) the basis for Jeffries' use of a 5.0% annual growth rate; (ii) the inputs and assumptions underlying Jefferies' use of the range of terminal EPS multiples of 10.4x to 12.5x; (iii) the terminal values used in the analysis; and (iv) the individual inputs and assumptions underlying Jefferies' use of the discount rates ranging from 8.8% to 12.8%.

37. When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not

contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and

misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of NYCB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of NYCB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

53. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: June 25, 2021 | Respectfully submitted, |
| | By: */s/ Joshua M. Lifshitz*<br>Joshua M. Lifshitz<br>Email: jml@jlclasslaw.com<br>**LIFSHITZ LAW FIRM, P.C.**<br>1190 Broadway,<br>Hewlett, New York 11557<br>Telephone: (516) 493-9780<br>Facsimile: (516) 280-7376<br><br>*Attorneys for Plaintiff* |